UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
NICK SPITHOGIANIS,                    : 07 Civ. 4609 (PAC)(JCF)
                                      :
                 Plaintiff,           :      REPORT AND
                                      :      RECOMMENDATION
      - against -                     :
                                      :
                                      :
YUSEF HAJ-DARWISH, NASHWA DARWISH     :
NADAN AL DALLAL, MOUTAZZ HAJ          :
DARWISH, PAUL M. VALLERA, and         :
ADAM T. RODMAN,                       :
                                      :
                 Defendants.          :
- - - - - - - - - - - - - - - - - - -:
TO THE HONORABLE PAUL A. CROTTY, U.S.D.J.:

      Nick Spithogianis, proceeding pro se, commenced this action

for breach of contract, fraud, and other wrongs allegedly committed

by Yusef Haj-Darwish and certain of his family members in

connection with a business venture jointly owned by Dr. Haj-Darwish

and the plaintiff.   The named family members are Nashwa Jaber

(named in the Complaint as "Nashwa Darwish"), Nadan Al Dallal, and

Moutazz Haj Darwish.   The plaintiff further charges two of Dr. Haj-

Darwish's medical associates, Paul M. Vallera and Adam T. Rodman,

with tortious interference of an agreement between the plaintiff

and Dr. Haj-Darwish.   Dr. Haj-Darwish has moved pursuant to Rules

12(c) and 12(h)(3) of the Federal Rules of Civil Procedure, and Ms.

Jaber has moved pursuant to Rules 12(b)(1), 12(b)(2), and 12(b)(6),

to dismiss the Complaint on grounds that (1) the amount in

controversy is not sufficient to confer subject matter jurisdiction

over this action, (2) the Court does not have personal jurisdiction

1

over Ms. Jaber, and (3) the Complaint fails to state a claim for relief.   Defendants Haj-Darwish and Jaber (collectively, the "moving defendants") further move for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure.   For the reasons that follow, I recommend that judgment be granted in favor of Dr. Haj-Darwish and Ms. Jaber dismissing the Complaint but that the motion for sanctions be denied.

Background

On July 28, 2005, Nick Spithogianis entered into an agreement with Yusef Haj-Darwish, a medical doctor residing in Massachusetts, and Jerome Goldman, an attorney, to transfer part ownership of a New York corporation, Group Distribution, Ltd. ("Group"), to Dr. Haj-Darwish and Mr. Goldman. (Compl., ¶ 9; Stockholders Agreement, attached as Exh. A to Declaration of Yusef Haj-Darwish in Support of Motion to Dismiss dated July 25, 2007 ("Haj-Darwish Decl.") at 1).   Mr. Spithogianis had previously been the sole officer, director, and shareholder of Group. (Compl., ¶ 7).   In consideration for a capital contribution of $75,000, Dr. Haj-Darwish received a 40% ownership interest in the company. (Stockholders Agreement at 1).   Mr. Goldman received a 20% ownership interest for the provision of "professional legal services" to Group.   (Stockholders Agreement at 1).   Dr. Haj-Darwish became the President and Secretary of Group, and Mr. Spithogianis became the Chairman and Chief Executive Officer.

2

(Stockholders Agreement at 6).

Shortly thereafter, when the company required more funds to continue operations, the plaintiff claims to have lent the company a total of $40,000, consisting of $30,000 for general expenses and $10,000 to pay the legal fees of Dr. Haj-Darwish's attorney, Richard Franzblau.[1]  (Compl., ¶ 14).  The plaintiff alleges that Dr. Haj-Darwish also served as guarantor for a loan of $50,000 to the company (Compl., ¶ 14) and for a lease on a Mercedes Benz rented by the company and driven by Mr. Spithogianis.  (Affidavit of Nick Spithogianis dated Aug. 30, 2007 ("Spithogianis 8/30/07 Aff."), ¶ 11; Reply Declaration of Yusef Haj-Darwish dated Sept. 16, 2007 ("Haj-Darwish 9/16/07 Decl."), ¶ 2).

The business objective of Group changed over time.  When the Stockholders Agreement was executed, the objective was to supply gas stations with foodstuffs, coffee, and related items. (Compl., ¶ 11). Later, in October 2005, that project was discontinued in favor of a plan to purchase two truck stops that were for sale. (Compl., ¶ 15). Finally, in February 2006, the truck stop project was replaced by a plan to build and market self-contained facilities to serve fast food. (Compl., ¶ 20-21).

The plaintiff alleges that, as part of the original agreement, Dr. Haj-Darwish promised that he and certain of his family members

---

[1] An allegation appearing later in the Complaint suggests that the plaintiff may be claiming to have paid $10,000 for Mr. Franzblau's fees separate and apart from the $40,000 loan. (Compl., ¶ 27).

3

named in the Complaint would make additional investments and guarantee financing as necessary, in exchange for a percentage ownership in Group or some other consideration. (Compl., ¶¶ 10, 16-19, 21). In return, the plaintiff would rely on his previous experience in the food industry to carry out the day-to-day business of the venture. (Compl., ¶ 10). According to the plaintiff, each modification of the business objective of Group was accompanied by a promise by Dr. Haj-Darwish that he or his family members would "back" the new project financially. (Compl., ¶¶ 16, 21). In reliance, the plaintiff redirected his efforts towards the new project. (Compl., ¶¶ 17, 21). For example, when the company was planning the purchase of the truck stops, Dr. Haj-Darwish allegedly stated that he and his family members would make the down payment and serve as guarantors for a $6,000,000 commercial mortgage from an institutional lender. (Compl., ¶¶ 17-18). Later, when the company had switched over to the fast food project, Dr. Haj-Darwish promised that he would borrow $250,000 and invest $150,000 of it in Group. (Compl., ¶ 27). He denies making any representations that would have obligated him or his family members to finance or guarantee loans to Group outside of the Stockholders Agreement. (Answer of Defendant Yusef Haj-Darwish, ¶¶ 10, 13, 17, 23, 26). Dr. Haj-Darwish eventually borrowed the $250,000, but invested only $30,000 in the company, apparently investing the balance towards remodeling a medical clinic on the advice of Mr.

Vallera and Mr. Rodman. (Compl., ¶¶ 28-29). The fast food project appears to have stalled after the plaintiff designed a model unit and brochure. (Compl., ¶¶ 22, 24, 26).

In early 2007, the parties attempted to negotiate an agreement winding up the business of Group. However, negotiations broke down in April 2007, and an agreement was never executed. (Declaration of Richard Franzblau dated Sept. 12, 2007, ¶¶ 2-4). The plaintiff filed the instant action on May 31, 2007, demanding $10,000,000 in damages. On July 30, 2007, Ms. Jaber filed a motion to dismiss, and Defendant Haj-Darwish filed an answer and a motion for judgment on the pleadings. On September 14, 2007, counsel for Ms. Jaber and Dr. Haj-Darwish served the pending motion for Rule 11 sanctions on the plaintiff. (Affirmation of Service of Jeffrey Farmer dated Sept. 14, 2007, attached to Notice of Motion for Rule 11 Sanctions). The safe harbor period provided by Rule 11(c)(1)(A) expired on October 5, 2007, and the motion was then filed with the Court. The other defendants in the action have not been served.

<u>Discussion</u>

<u>      A.   Standard of Review</u>

In considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must accept as true all factual allegations in the complaint and must draw all reasonable inferences in favor of the plaintiff. <u>Erickson v. Pardus</u>, __ U.S. __, __, 127 S. Ct. 2197, 2200 (2007) (per curiam); <u>Freedom Holdings, Inc. v. Spitzer</u>, 363 F.3d 149, 151 (2d Cir.

2004).  A complaint may not be dismissed for failure to state a cause of action if it provides the defendants "fair notice of what the [] claim is and the grounds upon which it rests." <u>Bell Atlantic Corp. v. Twombly</u>, __ U.S. __, __, 127 S. Ct. 1955, 1964 (2007) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)).  The complaint must provide factual allegations sufficient to raise a right to relief above the level of speculation; however, the allegations need not be detailed. <u>Id.</u> at __, 127 S. Ct. at 1955, 1964-65.  The liberal pleading standard applies with even greater force where a plaintiff alleges civil rights violations or proceeds <u>pro se</u>.  <u>Hernandez v. Coughlin</u>, 18 F.3d 133, 136 (2d Cir. 1994); <u>see also</u> <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972) (holding <u>pro se</u> complaint to less stringent standard).  Pleadings of a party that is proceeding <u>pro se</u> should be read "to raise the strongest arguments that they suggest." <u>Green v. United States</u>, 260 F.3d 78, 83 (2d Cir. 2001) (quoting <u>Graham v. Henderson</u>, 89 F.3d 75, 79 (2d Cir. 1996)).

In considering a motion for judgment on the pleadings pursuant to Rule 12(c), the court is likewise required to draw all inferences in favor of the nonmoving party. <u>See</u> <u>Oneida Indian Nation v. City of Sherrill</u>, 337 F.3d 139, 152 (2d Cir. 2003), <u>rev'd on other grounds</u>, __ U.S. __, 125 S. Ct. 1478 (2005); <u>Miller v. Wolpoff & Abramson, L.L.P.</u>, 321 F.3d 292, 300 (2d Cir. 2003); <u>King v. American Airlines, Inc.</u>, 284 F.3d 352, 356 (2d Cir. 2002).  The court is generally limited to reviewing the allegations in the

complaint and documents attached to or incorporated by reference, though it may also consider documents necessarily relied upon by the plaintiff in drafting the complaint.  See Gryl v. Shire Pharmaceuticals Group PLC, 298 F.3d 136, 140 (2d Cir. 2002); Chambers v. Time Warner, Inc., 282 F.3d 147, 152-54 (2d Cir. 2002). If other "matters outside the pleadings are presented to and not excluded by the court," then the court must treat the motion as one for summary judgment. Fed. R. Civ. P. 12(d). In such an instance, summary judgment is appropriate only if, after "all parties . . . [are] given a reasonable opportunity to present . . . pertinent [material]," id., "there is no genuine issue as to any material fact and [] the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). See Miller, 321 F.3d 292 at 300.

        B.   Breach of Contract

        Construing the Complaint liberally, the plaintiff raises breach of contract claims relating to several alleged oral agreements by Dr. Haj-Darwish to invest over and above what was required of him in the July 2005 Stockholders Agreement. The last agreement in time is the only one that could be enforceable; however, the plaintiff has not alleged any recoverable damages resulting from its breach. Thus, the Complaint does not state of cause of action for breach of contract.

        To establish a claim for breach of contract under New York law, the plaintiff must plead and prove (1) the existence of a contract, (2) performance by the plaintiff, (3) non-performance by

7

the defendant, and (4) damages. See First Investors Corp. v. Liberty Mutual Insurance Co., 152 F.3d 162, 168 (2d Cir. 1998); Oldcastle Precast, Inc. v. United States Fidelity & Guaranty Co., 458 F. Supp. 2d 131, 141 (S.D.N.Y. 2006). Where there is no written agreement between the parties, the plaintiff must establish, "through the words and/or conduct of the parties, that a contract was made and that its terms are definite." Zurich Insurance Group v. Grandurismo, Inc., No. 00 Civ. 980, 2000 WL 1677941, at *3 (S.D.N.Y. Nov. 8, 2000). "[C]ourt[s] should endeavor to enforce agreements" where the material terms can be ascertained, Rates Technology, Inc. v. New York Telephone Co., No. 94 Civ. 9297, 1995 WL 438954, at *4 (S.D.N.Y. July 25, 1995); however, a court may dismiss a claim if it is "satisfied that the agreement cannot be rendered reasonably certain by reference to an extrinsic standard that makes its meaning clear." Cobble Hill Nursing Home v. Henry & Warren Corp., 74 N.Y.2d 475, 483, 548 N.Y.S.2d 920, 923 (1989).

The first agreement alleged by the plaintiff was made in July 2005 "as part of the [Stockholders Agreement] between the parties," when Dr. Haj-Darwish allegedly promised that he and his family "would provide the necessary funding and/or guarantees . . . to commence" the gas station project. (Compl., ¶ 10). However, there was no indication that the parties agreed on what amounts Dr. Haj-Darwish would be obligated to invest in the business or when, or what, the plaintiff would provide in return other than "his

8

experience and expertise in the food industry" generally. (Compl., ¶ 10). Thus, the essential terms of the July 2005 agreement are too indefinite to be enforceable.[2,3] See Best Brands Beverage, Inc. v. Falstaff Brewing Corp., 842 F.2d 578, 587 (2d Cir. 1987) (contract insufficiently definite where it lacked "essential terms" including price and duration).

A second agreement was purportedly reached sometime between October 2005 and February 2006, when Dr. Haj-Darwish agreed that he and his family members would provide a 10% down payment and serve as guarantors for a commercial mortgage with Accordia, Inc. for the truck stop purchase project. (Compl., ¶¶ 17-18). This agreement is not enforceable, as the parties appear to have replaced it with the subsequent agreement to pursue the fast food project. See May

---

[2] The defendant contends that the Stockholders Agreement, as a written agreement, negates any claim based on oral agreements to provide this additional funding and cites Cohen v. Acorn International Ltd., 944 F. Supp. 204 (S.D.N.Y. 1996), for support. (Memorandum of Defendants Yusef Haj-Darwish and Nashwa Jaber in Support of Motions for Judgment on the Pleadings and Dismissal of the Complaint ("Def. Memo.") at 6-7, 18-19). However, that case stands for the proposition that a written document integral to a claim will control if it directly contradicts allegations in the complaint. Id. at 207. Here, the plaintiff's claims are based on purported promises by Dr. Haj-Darwish relating to future investments. On this issue, the Stockholders Agreement is not contradictory, but silent.

[3] The Complaint might also be construed to allege agreements in October 2005, when the defendant "implied" that he "would provide [financial backing] for the truck stop purchases" generally (Compl., ¶ 16), and in February 2006, when the defendant made generic "promises and assurances that funds and/or guarantees would be available for [the] fast food project" in February 2006. (Compl., ¶ 21). These claims would suffer from the same lack of definiteness as the July 2005 statement.

Department Stores Co. v. International Leasing Corp., 1 F.3d 138, 140 (2d Cir. 1993) (noting that parties can agree to immediately extinguish an existing obligation "by the acceptance of a new promise" in the form of a novation).[4]

The final agreement alleged in the Complaint was made sometime between February 2006 and the fall of the same year, when the defendant purportedly promised that his brother would borrow $250,000 and loan it to Group to finance production of the fast food units. (Compl., ¶ 25). In reliance, the plaintiff set to work hiring an architect, designing a model unit, securing agreements with fast food manufacturers, preparing a brochure, and making arrangements with Accordia, Inc. to provide additional financing for the project. (Compl., ¶¶ 21-25).[5] Later, when the

---

[4] The defendant argues that any promise to guarantee the debt of Group is rendered void and unenforceable by the Statute of Frauds, which requires that a "promise to answer for the debt . . . of another" be made in writing. N.Y. Gen. Oblig. Law § 5-701(a)(2). (Def. Memo. at 22). The statute of Frauds is not applicable, however, where the promisor makes a promise to guarantee some future debt, or, in other words, a promise to promise. See Schneider v. Bytner, 105 A.D.2d 498, 500, 481 N.Y.S.2d 777, 779 (3rd Dep't 1984) (declining to apply the Statute of Frauds where, at the time of the alleged promise, no debt was yet owed).

[5] While the plaintiff purportedly acted in reliance on Dr. Haj-Darwish's alleged promise, there is no indication that he undertook new and separate obligations or provided any other consideration. Under New York law, consideration is required to make a contract binding. See, e.g., Register.com, Inc. v. Verio, Inc., 356 F.3d 393, 427 (2d Cir. 2004); Weiner v. McGraw-Hill, Inc., 57 N.Y.2d 458, 463, 457 N.Y.S.2d 193, 196 (1982). However, lack of consideration is an affirmative defense, and a contract claim will not be dismissed for failure to plead consideration in the complaint. See Thomas H. Lee Equity Fund V, L.P. v. Bennett, No. 05 Civ. 9608, 2007 WL 950133, at *2 (S.D.N.Y. March 28, 2007).

defendant's brother invested the $250,000 elsewhere, the plaintiff claims that the parties modified their agreement: Dr. Haj-Darwish would personally borrow $250,000 and invest $150,000 in Group. (Compl., ¶ 27). Those funds were to be applied towards repaying the company's debt to the plaintiff and to advancing the fast food project. (Compl., ¶ 27). In the end, Dr. Haj-Darwish invested only $30,000 of this money in Group. (Compl., ¶ 28).

While this last agreement contains enough detail to survive dismissal based on indefiniteness, the plaintiff will not be able to recover any damages allegedly arising out of its breach. The Complaint seeks compensation for "lost credibility," "[peer] ridicule," and "lost [] investment and business." (Compl., ¶ 28).[6] However, "[d]amages to reputation generally are not recoverable in a breach of contract action under New York law." Smith v. Positive Productions, 419 F. Supp. 2d 427, 453 (S.D.N.Y. 2005); see also MacArther Construction Corp. v. Coleman, 91 A.D.2d 906, 906, 457

---

[6] Construing the Complaint liberally, the plaintiff also may be claiming that Dr. Haj-Darwish's refusal to invest the remainder of the $150,000 led to Group's failure to repay the plaintiff's loan of $40,000 (or $50,000, if one goes by paragraph 27 of the Complaint) (Compl., ¶¶ 28, 32). However, even if the plaintiff could overcome the other hurdles associated with such a claim, that amount would not be sufficient to confer subject matter jurisdiction over this diversity action in federal court. See 28 U.S.C. § 1332(a)(1); Burr ex rel. Burr v. Toyota Motor Credit Co., 478 F. Supp. 2d 432, 438 (S.D.N.Y. 2006) ("A party asserting jurisdiction bears the burden to show that there is a reasonable probability that the claim is in excess of the statutory jurisdictional amount [of $75,000].") (internal quotation omitted).

N.Y.S.2d 530, 531 (1st Dep't 1983) (finding injury to reputation not actionable). Furthermore, a claim for lost profits is subject to stringent requirements: the plaintiff must specifically plead them and show that (1) the loss of profits was directly caused by the breach, (2) the damages can be proven with reasonable certainty, and (3) the damages were within the contemplation of the parties at the time the contract was made. See Tractebel Energy Marketing, Inc. v. AEP Power Marketing, Inc., 487 F.3d 89, 109 (2d Cir. 2007); Merlite Industries, Inc. v. Valassis Inserts, Inc., 12 F.3d 373, 376 (2d Cir. 1993); see also Kenford Co. v. County of Erie, 67 N.Y.2d 257, 261, 502 N.Y.S.2d 131, 132 (1986). Where lost profits are asserted for a new business without a "reasonable basis of experience upon which to estimate [them]," the claim "is subject to an even stricter standard." Lovely Peoples Fashion, Inc. v. Magna Fabrics, Inc., No. 95 Civ. 8450, 1998 WL 422482, at *5 (S.D.N.Y. July 22, 1998) (internal quotation omitted). As the moving defendants point out, any lost profits in this case would have been generated by a business that had not progressed beyond the concept stage and did not have any assurance of future orders; thus, the plaintiff's claim is speculative and does not form the basis for recovery. See Carruthers v. Flaum, 365 F. Supp. 2d 448, 470 (S.D.N.Y. 2005) (dismissing claim for lost profits as speculative where it was predicated on the coming to fruition of a "wholly new business enterprise [] with no track record of accomplishment"); Nwachukwu v. Chemical Bank, No. 96 Civ. 5118,

1997 WL 441941, at *3 (S.D.N.Y. 1997) (declining to sustain claim for "highly speculative" damages from loss of business when bank erroneously debited funds from plaintiff's account).

Because the plaintiff has not identified any damages flowing from breach of an enforceable agreement that are recoverable under New York law, he has not stated a cognizable contract claim. Normally, the plaintiff might be granted an opportunity to replead the element of damages in light of his pro se status. However, Mr. Spithogianis already took the opportunity to raise new claims for damages in his opposition papers in an effort to show that the amount in controversy exceeded $75,000. If he had any other theory of damages arising from a breach of contract claim, he would presumably have included them there. "Leave to amend may be denied following a [] dismissal if an amendment would be futile." Aetna Casualty and Surety Co. V. Aniero Concrete Co., 404 F.3d 566, 584 (2d Cir. 2005). Therefore, the claim should be dismissed with prejudice.

    C.    Fraud

    The Complaint alleges that, in about October 2005, Dr. Haj-Darwish promised the plaintiff that he and his family members would finance or guarantee the purchase of two truck stops. (Compl., ¶¶ 15-16, 18). The plaintiff asserts that this statement was fraudulent, as Dr. Haj-Darwish never had any intention of doing so. (Compl., ¶ 19). He believes Dr. Haj-Darwish made this statement in order to induce him to forego the gas station project and redirect

13

his efforts toward the truck stop project.  In purported reliance on this representation, the plaintiff met with owners, examined their records, and secured a commitment for a commercial mortgage. (Compl., ¶ 17).

To state a cause of action for fraud under New York law, the plaintiff must allege that: (1) the defendant made a false statement of material fact, (2) the defendant had knowledge of its falsity, (3) the defendant intended to defraud the plaintiff, (4) the plaintiff reasonably relied on the misrepresentation, and (5) the plaintiff suffered damages as a result.  See Kaye v. Grossman, 202 F.3d 611, 614 (2d Cir. 2000).  In addition, Rule 9(b) of the Federal Rules of Civil Procedure requires that circumstances constituting fraud must be stated with particularity, meaning that the complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993).  The knowledge or intent of the speaker may be averred generally; however, conclusory allegations are not permitted.  See Travelers Indemnity Co. of Illinois v. CDL Hotels USA, Inc., 322 F. Supp. 2d 482, 499, 500 (S.D.N.Y. 2004). In addition, the complaint must "allege facts that give rise to a strong inference of fraudulent intent" by showing that the defendant "had both motive and opportunity" to defraud or by presenting "strong circumstantial evidence of conscious

14

misbehavior." <u>In re Carter-Wallace, Inc. Securities Litigation</u>, 220 F.3d 36, 39 (2d Cir. 2000) (internal quotations and citations omitted).

The plaintiff has not adequately pled a cause of action for fraud. He has failed to allege any facts from which to infer fraudulent intent on the part of Dr. Haj-Darwish at the time the statements at issue were made. Indeed, it is just as plausible that Dr. Haj-Darwish initially intended to provide the necessary payment and guarantees to finance the truck stop purchases, but ultimately decided not to support the project due to some intervening change in circumstances. The plaintiff's conclusory allegation of intent is insufficient to make out a claim of fraud even under the more relaxed notice pleading standard of Rule 8(a) of the Federal Rules of Civil Procedure. <u>See</u> <u>Friedman v. Anderson</u>, 23 A.D.3d 163, 166, 803 N.Y.S.2d 514, 517 (2005) ("A mere recitation of the elements of fraud is insufficient to state a cause of action" under New York law) (quoting <u>National Union Fire Insurance Co. of Pittsburgh v. Robert Christopher Associates</u>, 257 A.D.2d 1, 9, 691 N.Y.S.2d 35, 41 (1st Dep't 1999)). It certainly does not meet the "strong inference" standard under Rule 9(b).

A <u>pro se</u> plaintiff would typically be afforded an opportunity to replead his fraud claim to comport with the requirements of Rule 9(b). In this case, however, even if the plaintiff were able to adequately plead every other element of fraud, he would not be able to claim damages. As with the contract damages discussed above,

the damages alleged in the Complaint are not recoverable on a fraud claim under New York law. Fraud damages are limited to "the actual pecuniary loss suffered" as a direct result of the misrepresentation. <u>Kulas v. Adachi</u>, No. 96 Civ. 6674, 1997 WL 256957, at *10 (S.D.N.Y. May 16, 1997) (citing <u>Lama Holding Co. v. Smith Barney Inc.</u>, 88 N.Y.2d 413, 421, 646 N.Y.S.2d 76, 80 (1996)); <u>see</u> <u>Kregos v. Associated Press</u>, 3 F.3d 656, 665 (2d Cir. 1993). Damages for injury to a plaintiff's business reputation or lost profits that would have been realized but for the fraud are generally not recoverable. <u>See</u> <u>Saleemi v. Pencom Systems Inc.</u>, No. 99 Civ. 667, 2000 WL 640647, at *6 (S.D.N.Y. May 17, 2000); <u>Kulas</u>, 1997 WL 256957, at *10. Here, the only damages that the plaintiff alleges were a result of the failed truck-stop deal are lost profits. (Compl., ¶¶ 19-20, 32). In the rare case, fraud damages based on the relinquishment of an alternative bargain have been recognized, but only because the fraud caused the plaintiff to give up some quantifiable, concrete alternative opportunity. <u>See</u> <u>In re MarketXT Holdings Corp.</u>, No. 04-12078, 2006 WL 2864963, at *21 (Bankr. S.D.N.Y. Sept. 29, 2006)(distinguishing the more common fact pattern in <u>Lama</u> where the loss of a bargain is "undeterminable and speculative"); <u>Navaretta v. Group Health Inc.</u>, 191 A.D.2d 953, 953, 595 N.Y.S.2d 839, 840-41 (3d Dep't 1993) (permitting claim for loss of salary and benefits in connection with former employment caused by subsequent employer's fraudulent inducement). This is not such a case. Thus, the claim should be dismissed with

16

prejudice because granting leave to replead would be futile.  <u>See</u>
<u>Aetna Casualty</u>, 404 F.3d at 584.

     D.   <u>"New" Claims</u>

    In response to the moving defendants' assertion that the
amount in controversy requirement has not been met, the plaintiff
raises a number of new allegations in his opposition papers.  These
include claims that Dr. Haj-Darwish (1) owes him the remaining
balance on an automobile lease, (2) owes him unpaid wages and
reimbursement for expenses, and (3) owes unpaid wages to two non-
parties to the dispute.  Because these claims were not included in
the Complaint, I will construe them as a motion to amend and
discuss them accordingly.

    Leave to amend should be freely granted "when justice so
requires."  Fed. R. Civ. P. 15(a)(2).  Notwithstanding the
liberality of the rule, leave may be denied if the court (1) finds
undue delay, bad faith or dilatory motive on the part of the
plaintiff; (2) determines that amendment would cause undue
prejudice to the defendant; or (3) concludes that the amendment
would be futile.  <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1961).

    In the first new claim, the plaintiff asserts that Dr. Haj-
Darwish, as the guarantor of an automobile used by the plaintiff,
must pay the plaintiff the balance of the lease, or $68,821.87,
because "payment is being demanded from [Mr. Spithogianis]."
(Spithogianis 8/30/07 Aff., ¶¶ 11-12).  This allegation fails to

17

state a cognizable cause of action. As guarantor of the lease, Dr. Haj-Darwish is obliged to pay the automobile dealer, not the plaintiff. In addition, it is hard see how payment could be demanded of the plaintiff personally, since the vehicle was leased by Group. (Motor Vehicle Lease Agreement dated Nov. 29, 2005, attached as Exh. A to Haj-Darwish 9/16/07 Decl.). Indeed, if the plaintiff has used the automobile for purposes outside the scope of Group's business, he may be obliged to reimburse either Group or Dr. Haj-Darwish for payments made during that period.

Next, the plaintiff alleges that Dr. Haj-Darwish owes him $26,000 in unpaid wages and $14,400 for business expenses. (Spithogianis 8/30/07 Aff., ¶ 13). Shareholders are generally not liable in their personal capacity for the debts of a corporation. In the case of a closely-held corporation, "laborers, servants or employees other than contractors," may pursue an action against the ten largest shareholders "for services performed by them for such corporation." N.Y. Bus. Corp. Law § 630(a). However, the plaintiff, as the Chairman, CEO, and 40% owner of the company, would not qualify as a "laborer, servant, or employee" entitled to protection. See 15 N.Y. Jur. 2d Business Relationships § 965; Depperman v. Chenango Valley Pet Foods, 201 A.D.2d 936, 936, 607 N.Y.S.2d 760, 761 (4th Dep't 1994). Nor does the plaintiff have a claim under breach of contract or promissory estoppel theories, since there has been no allegation that Dr. Haj-Darwish agreed to assume any personal liability separate and apart from Group's

18

liability for the claimed wages and expenses.

Finally, the plaintiff alleges that Dr. Haj-Darwish owes a total of $12,500 in unpaid wages to two other individuals who purportedly worked for Group, Ralph Stein and John Williams. (Spithogianis 8/30/07 Aff., ¶ 13).  These individuals are not parties to the action, and the plaintiff does not have standing to assert claims on their behalf.

Each of the new claims then, would be futile.

In summary, none of the claims asserted in the Complaint or suggested in Mr. Spithogianis' opposition papers state a cause of action, and Dr. Haj-Darwish's motion for judgment on the pleadings should therefore be granted.  Because no distinct claims have been asserted against Ms. Jaber, her motion to dismiss for failure to state a claim should likewise be granted.

With respect to the remaining defendants, the time for service expired on September 28, 2007, 120 days after the Complaint was filed.  Fed. R. Civ. P. 4(m).  The failure to serve them within the parameters of Rule 4 warrants dismissal without prejudice.  See McGann v. State of New York, 77 F.3d 672, 674 (2d Cir. 1996).

F.    Sanctions

The moving defendants have requested that the Court impose sanctions against Mr. Spithogianis pursuant to Rule 11 of the Federal Rules of Civil Procedure.  They assert that the claims in his Complaint are meritless and that the lawsuit was initiated for

19

the improper purpose of harassing Dr. Haj-Darwish and extorting payment from him.  (Memorandum of Law in Support of Motion of Defendants Yusef Haj-Darwish and Nashwa Jaber For Rule 11 Sanctions ("Def. Rule 11 Memo.") at 1-2).

Rule 11 provides for the imposition of sanctions against a party who advances a frivolous legal argument or asserts claims without a reasonable factual basis or improper purpose.  Fed. R. Civ. P. 11(b), (c).  It imposes an affirmative duty on a litigant to conduct a reasonable inquiry into the law and facts before filing a pleading, and the standard to be applied is one of objective reasonableness.  See Business Guides, Inc. v. Chromatic Communications Enterprises, Inc., 498 U.S. 533, 551 (1991); Oliveri v. Thompson, 803 F.2d 1265, 1278-79 (2d Cir. 1986) ("Although [previous Second Circuit law] might be read as leaving open the possibility of . . . a subjective violation of the rule, we hold today that there is no necessary subjective component to a proper Rule 11 analysis.").  Under this objective standard, a violation will be found if, at the time the litigant signed the pleading, Oliveri, 803 F.2d at 1274, it was "patently clear that a claim has absolutely no chance of success." Dujardin v. Liberty Media Corp., 359 F. Supp. 2d 337, 360 (S.D.N.Y. 2005) (quoting Katzman v. Victoria's Secret Catalogue, 167 F.R.D. 649, 659 (S.D.N.Y. 1996)). The decision to impose Rule 11 sanctions rests within the sound discretion of the district courts.  See Perez v. Posse Comitatus, 373 F.3d 321, 325 (2d Cir. 2004).  However, they "should be imposed

20

with caution," <u>Murawski v. Pataki</u>, 514 F. Supp. 2d 577, 590, (S.D.N.Y. 2007) (quoting <u>Knipe v. Skinner</u>, 19 F.3d 72, 78 (2d Cir. 1994)), and any doubts should be resolved in favor of the nonmovant. <u>See</u> <u>Perez</u>, 373 F.3d at 324.

Rule 11 applies to <u>pro</u> <u>se</u> litigants as well as litigants who are represented. While the court should "consider the special circumstances of litigants who are untutored in the law," <u>Maduakolam v. Columbia University</u>, 866 F.2d 53, 56 (2d Cir. 1989), a litigant's <u>pro</u> <u>se</u> status does not give him "license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded dockets." <u>Murawski</u>, 514 F. Supp. at 590 (quoting <u>Malley v. New York City Board of Education</u>, 207 F. Supp. 2d 256, 258 (S.D.N.Y. 2002)). Furthermore, where a litigant has some experience with the legal system, courts may treat him less leniently than "wholly inexperienced <u>pro</u> <u>se</u> litigants." <u>Muniz v. Goord</u>, No. 9:04-CV-0479, 2007 WL 2027912, at *6 n.30 (N.D.N.Y. July 11, 2007); <u>see also</u> <u>Kadan v. Williams</u>, 89 Civ. 3379, 1990 WL 47680, at *3 (S.D.N.Y. April 11, 1990) (imposing sanctions on businessman familiar with litigation); <u>Bryant v. American Embassy (AMC)</u>, No. 88 Civ. 0294, 1988 WL 68740, at *1 (S.D.N.Y. 1988) (noting that <u>pro</u> <u>se</u> plaintiff's ability "to consult with an attorney" exposed him to a higher risk of sanctions). In determining whether sanctions should be imposed on a <u>pro</u> <u>se</u> litigant, the court should consider whether the litigant has been previously warned that his conduct is in

violation of Rule 11. See Commer v. American Federation of State, County and Municipal Employees, 272 F. Supp. 2d 332, 340 (S.D.N.Y. 2003); Elghanian v. Schachter, 97 Civ. 0959, 1997 WL 607546, at *2 (S.D.N.Y. Oct. 1, 1997); Kuntz v. Pardo, 160 B.R. 35, 40 (S.D.N.Y. 1993).

In this case, the relevant pleading for the consideration of sanctions is the Complaint. That document contains highly speculative claims with little or no chance of recovery under existing law. However, I must factor in the plaintiff's pro se status in determining whether it was objectively unreasonable for him to assert them. Notwithstanding his previous experience with litigation[7] and the likelihood that he has received legal advice during the pendency of this case,[8] I do not find that the problems with the Complaint were so "patently clear" to someone without legal training that it was objectively unreasonable for the plaintiff to have filed it. Dujardin, 359 F. Supp. 2d at 360.

The moving defendants have submitted affidavits in support of

---

[7] See, e.g., Leptha Enterprises, Inc. v. Longenback, No. 90 Civ. 7704, 1991 WL 183373, at *3-4 (S.D.N.Y. Sept. 9, 1991)(imposing sanctions on the plaintiff's prior counsel, Mr. Goldman); Fareri v. Rain's International Ltd., 187 A.D.2d 481, 589 N.Y.S.2d 579 (2d Dep't 1992); Spithogianis v. Limbach, 53 Ohio St. 3d 55, 559 N.E.2d 449 (1990).

[8] See Letter of Nick Spithogianis dated Aug. 27, 2008, attached as Exh. F to Declaration of Louise Sommers dated Sept. 14, 2007 ("Sommers Decl.") ("After being advised by a lawyer what it meant . . . ."); Spithogianis 8/30/07 Aff., ¶ 2 ("I am advised that such an appearance was insufficient to confer jurisdiction . . . .").

their assertion that this lawsuit was initiated in bad faith as a vendetta against Dr. Haj-Darwish after his business relationship with the plaintiff broke down.  Those affidavits describe the plaintiff's "extra-judicial conduct," "threat[s]" and "defamatory statements about Dr. [Haj-] Darwish."  (Def. Rule 11 Memo. at 6).[9] The defendants argue that the plaintiff's inclusion of Dr. Haj-Darwish's family and associates in the suit and unspecified claim for millions of dollars in damages are further evidence of improper purpose.  (Def. Rule 11 Memo. at 1, 9).  However, while these factors would be probative of the plaintiff's subjective state of mind and hence would be useful in determining the type and severity of any sanction imposed, see Merex A.G. v. Fairchild Weston Systems, Inc., No. 85 Civ. 6596, 1996 WL 227826, at *10 (S.D.N.Y. May 3, 1996), they are not adequate to impose sanctions in the first place in the absence of an objectively frivolous pleading. See Storey v. Cello Holdings, LLC, 347 F.3d 370, 393 (2d Cir. 2003) (vacating imposition of sanctions for harassment because of lack of "objectively unreasonable statements"); Sussman v. Bank of Israel, 56 F.3d 450, 457-58 (2d Cir. 1995) (holding sanctions for improper

---

[9] For example, the plaintiff contacted several hospitals where Dr. Haj-Darwish practiced with allegations concerning the defendant's "mental condition" and competency to practice medicine, and claimed that he would report him to the Department of Homeland Security.  (Letter of Nick Spithogianis dated July 3, 2007, attached as Exh. C to Sommers Decl., at 2).  He further stated that he was willing to dismiss the suit if the defendant "sought [] professional help" and supplied proof to that effect. (Spithogianis 7/3/07 Letter at 2).

purpose inappropriate for a non-frivolous complaint, even where the plaintiff's motives for asserting claims "are not entirely pure").

Courts are reluctant to impose a penalty on a <u>pro</u> <u>se</u> litigant presenting his claims for the first time, speculative or not. However, the plaintiff is now on notice that future lawsuits arising from these facts and purporting to raise the same or similar claims will expose him to the full array of sanctions under Rule 11 and the inherent power of the federal courts, as any such litigation would be unreasonable and vexatious.  <u>See</u> <u>Lacy v. Principi</u>, 317 F. Supp. 2d 444, 449-50 (S.D.N.Y. 2004) (describing inherent power to enjoin litigants from abusing the judicial process).

<u>Conclusion</u>

For the reasons set forth above, I recommend that Dr. Haj-Darwish's motion for judgment on the pleadings and Ms. Jaber's motion to dismiss be granted, but that the motion for Rule 11 sanctions be denied. I further recommend that the claims against the remaining defendants be dismissed without prejudice pursuant to Rule 4(m). Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(e) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days to file written objections to this Report and Recommendation.  Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Paul A. Crotty, Room 735, and to the chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007.

Respectfully submitted,

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated: New York, New York
      January 7, 2008

Copies mailed this date:

Nick Spithogianis
806 117th Street
College Point, New York 11356

Louise Sommers, Esq.
Miller Korzenik Sommers, LLP
488 Madison Avenue, 11th Floor
New York, NY 10022

25